J. D. BLUE ET AL. *v.* N. R. C. WATSON ET AL., AND ELIZA DAKIN *v.* N. R. C. WATSON ET AL.

1. DEMURRER IN CHANCERY.   *Appeal from final decree.   Dismissal.*
   Although reluctant to disturb a final decree on the facts in which sub-.stantial justice has been done, yet if a demurrer is clearly well taken it must be given its proper effect even if this is a dismissal of the bill.

2. BILL OF INTERPLEADER.   *Paying fund into court.*
   The fact that the money is not paid into court with a bill of interpleader or offered to be paid is no ground of demurrer, but it is within the court's power, and is its duty, to refuse to allow the complainant to proceed until he pays in the money.

3. SAME.   *Affidavit of no collusion.*
   A bill of interpleader is demurrable unless accompanied by an affidavit that there is no collusion between the complainant and the parties defendant.   2 Dan. Ch. Prac. 1562.

4. BILL IN THE NATURE OF BILL OF INTERPLEADER.   *When maintainable.*
   A bill in the nature of a bill of interpleader is maintainable where the complainant is entitled, on payment of the money, to independent relief in addition to a discharge from liability to the adverse claimants, as for instance to enforce an equity of redemption when it is doubtful who owns the mortgage.

5. SAME.   *Complainant's interest in fund.*
   But a bill of interpleader is not maintainable, and it appears that a bill in the nature of one cannot be maintained, by a complainant who has an interest in the money which he proposes to pay into court.

6. SAME.   *Estate of deceased person.   Distributees.*
   A son who purchases land from his father cannot after administering on his estate maintain a bill against the other distributees, the estate creditors and an adverse claimant, in order to determine whether the estate or the claimant has the better right to the purchase-money.

7. INTERPLEADER. *Administrator. Creditors. Distributees. Claimant.*

An administrator cannot file a bill of interpleader or a bill in the nature of a bill of interpleader against the creditors and distributees of the estate and an adverse claimant of the assets, but a *bona fide* defence against the claim, although unsuccessful, will protect him against the creditors and distributees.

8. SAME. *Demurrer. Construction.*

Such a bill not being filed as a bill by an administrator to have the direction of the Chancery Court as to the execution of his official trust, cannot be sustained over a demurrer by construing it to be of this character.

9. SAME. *Trust and trustee.*

A trustee does not by his appointment lose all remedy for a demand which he previously had against the trust estate, and can proceed in chancery against the *cestuis que trust*, but an appointment as administrator confers no right to maintain a bill of interpleader which the complainant did not before possess.

APPEAL AND CROSS APPEAL from the Chancery Court of Lincoln County.

Hon. H. S. VAN EATON, Chancellor.

*R. H. Thompson,* for the appellants, J. D. Blue *et al.*

The court below erred in overruling the demurrers to the bill of interpleader. An administrator cannot interplead the estate. He is an interested party. He is constituted by the court a trustee to look after and protect the interest of the estate for the benefit of creditors and heirs. He will not be allowed to claim that he has no interest in property claimed by the estate, or to which the estate has a claim. It is contrary to the policy of the law. *Adams* v. *Dixon,* 19 Ga. 513.

*A. C. McNair,* for the same appellants.

If this is a strict bill of interpleader, it is fatally defective, as it does not show that the defendants claim the same debt, nor does it show that the complainant is a mere stakeholder. There is no affidavit annexed to the bill that it is not filed by collusion. In fact, without an enumeration of the various requirements of a bill of interpleader, it is sufficient to say that this bill is fatally defective. *Yarborough* v. *Thompson,* 3 S. & M. 291; *Browning* v. *Watkins,* 10 S. & M. 482; *Anderson* v. *Wilkinson,* 10 S. & M. 601; *Snodgrass* v. *Butler,* 54 Miss. 45; 4 Wait's Actions and Defences, 149–159; 2 Dan. Ch.

Prac. 1560, 1573; 2 Story Eq. Jur. §§ 800, 824. It is, however, claimed that the bill is not strictly a bill of interpleader, but is a bill in the nature of a bill of interpleader. The difference between the two is this, that in a bill of interpleader the complainant claims no relief against either of the defendants, but only asks that he may be at liberty to pay the money or deliver the property into court and be relieved of all further responsibility to either party in reference thereto; while in a bill in the nature of a bill of interpleader the complainant seeks to establish some right of his own, either legal or equitable, connected with the property or fund in question, or to obtain some affirmative relief for himself in a matter in which he is individually interested. Tested by these rules this is neither a bill of interpleader nor a bill in the nature of a bill of interpleader. 2 Story Eq. Jur. § 824.

*J. B. Deason*, for the appellant, Eliza Dakin.

The final decree is erroneous only in ordering part of the purchase-money to be paid to the estate of John Watson, and this court should render a decree ordering all of it to be paid to Eliza Dakin.

*Sessions & Cassedy*, for the appellee, N. R. C. Watson.

1. The essentials of a strict bill of interpleader are inapplicable, because this bill is not of that character. It is a bill in the nature of a bill of interpleader. Such a bill will lie by a party in interest to ascertain and establish his own rights where there are conflicting rights between third persons. *Parks* v. *Jackson*, 11 Wend. 442; 2 Story Eq. Jur. § 824. The complainant in this case brings the conflicting claimants of the purchase-money into court to enable him to relieve his real estate of the equitable mortgage by payment to the proper claimant.

2. Executors and trustees by bill in the nature of a bill of interpleader may take the advice of a chancery court on questions connected with the discharge of their duties. *Crosby* v. *Mason*, 32 Conn. 482. N. R. C. Watson, as administrator of John Watson, was trustee for the creditors and the heirs. He could not hasten a settlement of his liability by suit, for he could not sue himself, and it was not proper or to be expected that the administration of the estate of John Watson should be

kept open indefinitely to await suits by all the parties, in order that the matter might be determined in that way.  In a note to Adams Eq. 404, it is said that an executor may file a bill in the nature of a bill of interpleader to determine, under a proper construction of the will, whether slaves in his possession are entitled to freedom, making the legatees and next of kin parties.  *Osborne* v. *Taylor*, 12 Gratt. 117 ; *Crosby* v. *Mason*, 32 Conn. 482.

3.  The enlargement of chancery jurisdiction, by entertaining bills in the nature of bills of interpleader and bills of that character, has been wisely done.  It advances justice, prevents multiplicity of suits, and hastens the final closing of trust estates.  This case is illustrative.  By the bill of complaint, three sets of claimants — prospective litigants — are brought into court, and the question is settled as to which class the complainant owes.  The question of his liability to account for the same fund as administrator is also settled, and the final closing up of the estate of which he is administrator made possible at once.  Multiplicity of suits is avoided, the object of interpleader accomplished, and the correct and safe administration of an estate secured.

COOPER, J., delivered the opinion of the court.

N. R. C. Watson exhibited the bill in this cause, in the Chancery Court of Lincoln County against the heirs and distributees of John Watson, and against the heirs and distributees of one Nathaniel Watson, and against Mrs. Eliza Dakin, in which he states that he is the administrator of the estate of John Watson, appointed to that office by the said Chancery Court of Lincoln County.  That John Watson in his lifetime was the guardian of his brother, Nathaniel Watson, who was a lunatic, and that since the death of John Watson, he as administrator had filed in the Chancery Court of Jefferson County (where the guardianship of said lunatic had been awarded to his intestate) the final account of John Watson as such guardian, and that on such final accounting he as such administrator was found indebted to the heirs of Nathaniel Watson (who had also died) in the sum of six hundred and seventy-five dollars, and a decree was rendered in favor of the said

heirs against him as administrator of John Watson for said sum. He states that the estate of his intestate is insufficient to pay the debts due by it, and that his intestate at his death was not the owner of any real estate, and his personal estate consisted of an insignificant amount, unless it should appear on the facts stated in the bill then filed, that he himself was indebted to said estate. These facts as stated by him are as follows. About the year 1859 John Watson had borrowed from his daughter, Mrs. Dakin, the sum of one thousand dollars, none of the principal and but little of the interest of which he had ever paid to her. In 1868 John Watson sold to his son, William A. Watson, a small tract of land for the sum of three hundred dollars, which sum William A. Watson as complainant had been informed, was instructed by John Watson, and had agreed to pay over to Mrs. Dakin on account of the debt due to her from her father. Subsequently the complainant purchased from William A. Watson the land, at the price of six hundred dollars, of which sum he paid in cash to William A. Watson the sum of three hundred dollars, and the balance of the purchase-money he was instructed by William A. Watson, and agreed, to pay to Mrs. Dakin on her said debt against John Watson. The bill further shows that in the year 1869 the complainant purchased from his intestate (who was his father) the other lands then owned by said intestate, the consideration of his purchase being that he should support his mother, the wife of the intestate, during the remainder of her life, and at her death should pay to Mrs. Dakin the sum of five hundred dollars on the debt due to her by the intestate. The complainant further states that his mother has since died, and that he is now prepared to pay the sums due by him on account of the purchase of the two tracts of land, both that bought from his father and that bought from his brother, William A. Watson, that his sister, Mrs. Dakin, asserts her right to both sums, but that the heirs of Nathaniel Watson, in whose favor the decree was rendered by the Chancery Court of Jefferson County against the complainant as administrator of his father, also claim that the fund ought to be accounted for by him as a part of the assets of his intestate's estate, and threaten to sue him and the sureties on his bond as such administrator unless

he accounts as such administrator for the same, that he therefore is threatened by two adverse claims to the debt, and is unable to pay the same with safety either to Mrs. Dakin or to the creditors of his intestate's estate. He therefore prays that citation may issue for the heirs of John Watson, the heirs of Nathaniel Watson, and for Mrs. Dakin, and that they all be required to propound their claims to the debts, and submit them to the decision of the court, and that a decree be made directing the complainant to whom to pay the money so due by him. It appears by the bill that Nathaniel Watson died unmarried and without descendants, and that the heirs of John Watson, the intestate, are a part of the distributees of the estate of Nathaniel. The bill was not accompanied by an affidavit that there was no collusion between the complainant and any of the defendants, nor was there any offer to pay into court the sums due by him.

The defendants named in the bill were cited to appear, and some of the distributees of Nathaniel Watson demurred to the bill, assigning as causes of demurrer: First, that the money was not paid or offered to be paid into court; second, that the bill showed that the debt claimed by Mrs. Dakin was not identical with the debt claimed by the other defendants; third, that the bill showed that the complainant was interested in the fund in litigation, first as administrator of his father, second as one of the heirs of his father, and third as one of the heirs and distributees of the estate of Nathaniel Watson; fourth, because no affidavit was filed with the bill that there was not collusion between the complainant and some of the defendants. The demurrers were overruled by the court, and thereupon the defendants answered.

Mrs. Dakin claimed the whole fund under the agreements made by the complainant at the times of his purchases to pay them to her. The heirs and distributees of Nathaniel Watson asserted that the whole transactions were fraudulent and colorable, and intended by John Watson only for the purpose of preventing his estate from being made liable to the estate of Nathaniel Watson. Much testimony was taken, and on final hearing the Chancellor directed the complainant to pay over to Mrs. Dakin the sum of five hundred dollars with interest

thereon, the same being the amount which the complainant had agreed to pay as the purchase-money of the place bought by him from his father ; and to account as administrator of his father for the sum of three hundred dollars and interest thereon, the same being the amount due by him on account of the purchase-money of the lands bought by the complainant from his brother, William A. Watson. From this decree Mrs. Dakin appeals, assigning for error the refusal of the court to order both sums paid to her, and the distributees of Nathaniel Watson appeal, assigning for error, first the overruling of the demurrers interposed by them to the bill, and second the action of the court in decreeing any part of the sum in controversy to be paid to Mrs. Dakin.

A careful examination of the evidence has satisfied us that the Chancellor's decision was right on the facts, and we would affirm his decree, but for the error committed in overruling the demurrers interposed by the distributees of Nathaniel Watson. We are reluctant to disturb a decree in which substantial justice has been done, but the demurrers are so clearly good that we cannot avoid giving to them their proper effect, which results in a dismissal of the bill.

The first ground of demurrer assigned is not well taken. It was within the power of the court to decline to permit the complainant to proceed in the cause until the fund had been paid into court, and this ought to have been done, but the fact that the money was not paid or offered to be paid is not ground of demurrer. *Meux* v. *Bell*, 6 Sim. 175 ; 2 Dan. Ch. Prac. 1564.

The second ground of demurrer was itself fatal to the bill as a bill of interpleader, or as a bill in the nature of a bill of interpleader, for the heirs of Nathaniel Watson do not, so far as the bill shows, claim any right at all to the debt due by the complainant ; what they claim is a debt due by the estate of John Watson. It is true that they assert an intention to contend that the complainant himself is as administrator entitled to the debt due by him as an individual, and that his failure to account therefor will be a *devastavit* for which he and his sureties will be responsible to the creditors of the estate, but this is totally different from the assertion of a claim to the debt itself, and it

would lead to endless confusion if administrators were permitted to call into a court of chancery all the distributees and creditors of the estate he represents, whenever an adverse claim is asserted by others to a part of the assets of the estate, for the purpose of compelling them to interplead.   If in good faith he defends against the adverse claim and it is determined against him, he is protected from any claim to the same property afterwards asserted by the distributees or creditors of the estate. *Glyn* v. *Duesbury*, 11 Sim. 139 ; 4 Wait's Actions and Defences, 153, § 4, and authorities there cited.

The third ground of demurrer was well taken.   As a pure bill for an interpleader the bill was not maintainable, because the complainant shows an interest in the debt, if it is due to himself as administrator, both as administrator and as one of the distributees of his father's and uncle's estates.

It is however said by counsel for the complainant, that the bill is good as a bill in the nature of a bill of interpleader, and for this he cites 2 Story Eq. Jur. § 824.   It is there said, that " although a bill of interpleader, strictly so called, lies only where the party applying claims no interest in the subject-matter ; yet there are many cases where a bill, in the nature of a bill of interpleader, will lie by a party in interest, to ascertain and establish his own rights, where there are other conflicting rights between third persons."   But in none of the cases cited does it appear that the party applying claimed right or interest in the fund, which he proposed to pay into court. In *Mohawk & Hudson Railroad Co.* v. *Clute*, 4 Paige, 384, the company had been taxed in two towns on the same capital stock which was taxable in one only, and a bill in the nature of a bill of interpleader was sustained to settle the question as to which town was authorized to levy the tax.   *Thomson* v. *Ebbets*, Hopkins, 272, was a case of simple interpleader, and was sustained as such.   *Bedell* v. *Hoffman*, 2 Paige, 199, was a case in which the complainant was entitled to redeem mortgaged property, and it was doubtful to whom the money was due, and it was held that a bill in the nature of a bill of interpleader could be filed.   The cases of *Mitchell* v. *Hayne*, 2 Sim. & Stu. 63, and *Meux* v. *Bell*, 6 Sim. 175, are not at all applicable to the matter of the text they are cited to sustain.

In the first of these cases, the only point decided was, that one who claimed an interest in the money in his hands, as against one of the parties called on to interplead, could not maintain the bill, and the second decides only that a bill is not demurrable, because the plaintiff did not offer to pay the money into court.   The only distinction between a bill of interpleader, and one in the nature of a bill of interpleader, is, that in the former class the complainant only asks to be permitted to pay the money into court, and thereupon to be discharged from liability to the adverse claimants, while in the other he claims some independent other relief, to which he will be entitled upon the payment of the money.   In no case have we been able to find that the plaintiff claimed any interest in the fund itself.   It is only in cases in which the plaintiff is entitled to come into court upon some other ground of equitable jurisdiction, that he may, for the purpose of obtaining full relief, make defendants to his bill all parties claiming an interest in the money due by him.

The complainant's bill, as a bill of interpleader, was demurrable, because not accompanied by an affidavit that there was no collusion between him and the parties defendant.  .2 Dan. Ch. Prac. 1562.

It is said, however, that the bill ought to be maintained as a bill filed by the administrator to have the directions of the Chancery Court as to the execution of the trust of his office. The answer to this position is, that the bill is not filed by the complainant as administrator, for instructions touching the performance of his duty as such, but is exhibited by the person who chances to be administrator for relief as debtor.

The rule is, that if one has a claim which before becoming trustee he might have propounded against the trust estate, he shall not lose all remedy because of his appointment as trustee, and under such circumstances he may file a bill against the *cestuis que trust*, to enforce his demand.   *Davis* v. *Bowmar*, 55 Miss. 671.   But in this case the complainant, before his appointment as administrator, had no right to file a bill of interpleader, and such right does not arise, because of his appointment.'

*Decree reversed, demurrer sustained and bill dismissed.*