Coös,  }
Dec. 7, 1915. }

ALONZO D. BARRETT, *Adm'r*  *v.*  ELISHA H. CADY, *Adm'r.*

ELISHA H. CADY, *Adm'r*  *v.*  ZOE M. EVANS & *a.*

A bill of interpleader cannot be maintained where the plaintiff can determine the right between the conflicting claimants without hazard to himself; hence an administrator cannot maintain such a bill against the creditors, the distributees of the estate and an adverse claimant of the assets, because a *bona fide* defence against the claim, though unsuccessful, will protect the administrator against both creditors and distributees.

The heirs of a decedent have no title to the personal property in the hands of the administrator, but their right is to share in the assets remaining in the administrator's hands after payment of debts and expenses of administration.

Though the superior court may, in a proper case upon request, advise an administrator as to the execution of his trust, the court has no power to advise or direct in advance the action of the probate court.

An objection to the form of proceeding is waived by failure to take the objection upon a hearing on the merits.

The incompetency of the surviving party or of his representative to testify is waived, if the opposing executor or administrator has previously taken his deposition as to matters occurring during the lifetime and within the knowledge of the decedent.

In general, courts of equity follow the analogy of the statute of limitations; but, if under the circumstances recovery would be inequitable, a court of equity will refuse relief after an unexplained delay though less than the period of the statute.

The mere payment from one to another of a sum of money is not evidence of a promise of repayment, and creates no presumption that the payer retained any beneficial interest in the money or that the transaction was other than payment of a debt, or a gift.

A payment to or for one, for whom the payer is under some natural, moral or legal obligation to provide, is ordinarily presumed to be made to benefit such person, unless the evidence overcomes the natural presumption of gift or payment arising from the transaction.

TWO BILLS IN EQUITY.  The first is a suit to enforce a resulting trust; the second, a bill of interpleader.  Both suits were heard at the April term, 1915, of the superior court by *Sawyer*, J., who made a decree in favor of the plaintiff in the first bill, and to this decree the defendant Cady filed a bill of exceptions.

The plaintiff Barrett (hereinafter referred to as the plaintiff), is the administrator of John C. Evans appointed March 28, 1914.

John died June 17, 1906, intestate, leaving a widow, Janette, and a child by a previous marriage, Zoe M. Evans, surviving. The defendant Cady (hereinafter referred to as the defendant) was appointed April 23, 1913, administrator of Janette, John's widow, who died the same month, leaving three heirs. Cady, as administrator, came into possession of a bank book of the Gorham Savings Bank in Janette's name, the first deposit upon which was $1,000 made March 2, 1906. The book showed withdrawals June 13, 1906, $45.43, July 24, 1906, $254.57; and deposits in 1908 and 1909, making the balance, exclusive of interest, $885.60. The dividends credited made the amount due on the book at the time of the filing of plaintiff's bill $1,144.67, exclusive of a deposit of $85.75 made by Cady as administrator. Cady, as administrator, also took possession of certain personal property including silverware, all of which was appraised at $35, which sum, together with the said deposit, comprises all the property that has come to his possession.

The plaintiff's bill alleged that the deposit of $1,000 made in the name of Janette, March 2, 1906, was the money and property of John, and that it was deposited in the name of Janette on the understanding that it would be held in trust by her for John, subject to his control, and also claimed, as John's, certain of the personal property in Cady's possession as administrator of Janette, and alleged that there are certain outstanding bills due from John's estate. The prayer of the bill was that a resulting trust be decreed in favor of John's estate and that the defendant be ordered to pay the funds thereof to the plaintiff.

Cady's answer admitted that the original deposit was John's money but alleged that it was paid over to Janette by him either as compensation for care and services rendered his father at John's request or as a gift from John to Janette. Barrett was permitted to testify, subject to exception, that about three weeks before John died at Barrett's house, he overheard John and Janette talking the matter over and from their talk learned that it had been agreed between them that the money should be deposited in the Gorham Savings Bank in Janette's name for the convenience of John because he was in poor health; and that he had planned to go to Portland, Me., where he expected to buy a lodging house, in which event he would use the money deposited in Janette's name to pay for it. Barrett also testified that John did go to Portland shortly after the deposit was made to look over a lodging house but did not buy it. The court found that the testimony of Barrett correctly

stated the arrangement between John and Janette whereby the money was deposited in her name.

John had promised to give his daughter, Zoe, $200 to assist her in establishing herself in business and after John's death Janette paid her. $200 of the $254.57 withdrawn July 24, 1906. Thereafter, when Zoe was about to be married, she asked Janette for $200 more which was refused. Later she borrowed from and repaid to Janette the sum of $25. The $45.43 withdrawn June 13, 1906, was used to settle bills against John's estate as was also the balance of the sum withdrawn in July. From her own funds Janette paid $31.18 of John's bills.

The deposits on the book later than that of $1,000 were made by Janette from her own funds. The plaintiff learned of the agreement between John and Janette to deposit the money in Janette's name before John's death. It did not appear when he learned such deposit had been made. Zoe knew the fact of the deposit before her father's death. It was found that the silverware was the property of John.

Upon these findings it was decreed:

"That $700 of said deposit, with a due proportion of the accrued interest, belongs to the estate of John, . . . together with said silverware; and the remainder of said property belongs to the estate of Janette. . . . From the funds due to the estate of John, . . . Janette's estate shall be repaid $31.18 paid by her towards the funeral expenses, etc., of John, . . . with interest thereon from June 30, 1906, to date of judgment. This decree shall be certified to the probate court for its guidance in the settlement of the accounts of the respective administrators and in formulating its decree of distribution."

The defendant's bill of exceptions was duly allowed in which he excepted to the decree as against the evidence and the law and to various findings upon the ground that there was no evidence to sustain them and that they were against the weight of the evidence. He also excepted to the refusal to make certain findings requested by him, and to the denial of his motion made after the close of the hearing that the bill be dismissed because of lack of equitable jurisdiction, the plaintiff having an adequate remedy at law.

The defendant set up the claim of laches as a defence in his answer and excepted to a ruling that the claim of the plaintiff was not barred as matter of law by the statute of limitations or by laches.

Prior to the bringing of the suit, Barrett against Cady, Cady brought a bill of interpleader against Zoe M. Evans and the heirs.

of Janette alleging their conflicting claims to the property.    At the close of the hearing Cady moved for leave to dismiss the bill of interpleader, which motion was denied subject to exception.

*Ovide J. Coulombe* (by brief and orally), for the plaintiff.

*Jesse F. Libby* (by brief and orally), for the defendant.

PARSONS, C. J.    I. The bill of interpleader brought by Cady should be dismissed.    The issue presented by the plaintiff in a bill of interpleader is the existence of facts which give him the right to require the parties made defendants to interplead and settle the controversy between themselves.    "When the complainant's right to interpleader is established either by admissions in the answer or by proofs, he is dismissed with the costs of his litigation, which are to be paid out of the fund, and the conflicting claims of the defendants are then disposed of in the manner best adapted to the circumstances of the case."    Bispham Eq. (7th ed.), s. 422, p. 581.    A decree that a bill of interpleader is properly filed is the only decree the plaintiff is interested in obtaining.    2 Dan. Ch. Pl. & Pr. *pp.* *1560–*1572; Story, Eq. Pleading, *p.* *297 (b); *Supreme Commandery* v. *Donaghey*, 74 N. H. 466.    It does not appear that the defendants have interpleaded or that there has been any decree requiring them to do so, or any trial of the issue whether they should, or that the defendants have answered or even appeared.    In this situation by analogy to the right of a plaintiff to become nonsuit at any time before trial, it would seem that the plaintiff had the right as matter of law to dismiss his bill.    *Hood* v. *Marshall*, 69 N. H. 605; *Simpson* v. *Gafney*, 66 N. H. 477; *Webster* v. *Bridgewater*, 63 N. H. 296. But the bill should have been dismissed because it was not maintainable upon the facts alleged.    Such a bill "can be maintained only when the same debt or duty or other thing is claimed by two or more parties, by different and separate interests, and in which the claimant has no interest beyond that of a mere trustee or stakeholder, and where, from his own showing, he cannot determine the right between the conflicting claimants without hazard to himself. . . .    The danger of injury to the complainant arising out of the opposing claims and doubtful rights of the several defendants, as between themselves, is the general ground of jurisdiction in the case of a simple bill of interpleader.    It must appear from the complainant's own showing, that he cannot pay the debt or render

the duty or other thing to either of the parties claiming the same, without some risk of being subsequently liable for the same debt or duty to the other." *Farley* v. *Blood*, 30 N. H. 354, 361; *Page Belting Co.* v. *Prince*, 74 N. H. 262, 263, 264; *Supreme Commandery* v. *Donaghey*, 74 N. H. 466, 467, 468; *Badeau* v. *Rogers*, 2 Paige Ch. 209. ˙ Hence, an executor or administrator cannot file a bill of interpleader against the creditors and distributees of the estate and an adverse claimant of the assets, because a *bona fide* defence against the claim, though unsuccessful, will protect him against creditors and distributees. *Adams* v. *Dixon*, 19 Ga. 513, 65 Am. Dec. 608; *Blue* v. *Watson*, 59 Miss. 619; *Stevens, Adm'r* v. *Warren*, 101 Mass. 564. The heirs of Janette have no title to the property. Their right is to share in the assets remaining in the administrator's hands after payment of debts and expenses of administration. If the property in dispute belonged to Janette, until such distribution her administrator held the legal title, as did Barrett, John's administrator, if the property belonged to John. *Crosby & a.* v. *Charlestown, ante,* 39. Cady's title was precisely of the same nature as Barrett's and the controversy was solely between them.

II. The exceptions to the denial of the motion to set aside certain findings on the ground of the absence or insufficiency of the evidence and to the refusal to make requested findings cannot be considered without the evidence, which is not yet before the court. If it should become necessary to consider them, opportunity will be given the exceptor to furnish the substance of the evidence if he can do so.

III. By the constitution and the statute, the probate court has exclusive, original jurisdiction of the settlement and distribution of the estates of deceased persons. The superior court has no power to require an administrator to account for his administration upon a bill in equity or to revise proceedings in the probate court except upon appeal. *Glover* v. *Baker*, 76 N. H. 393, 398, 399. While the court may upon request advise the administrator as to the execution of his trust in a proper case, it has no power to advise or direct in advance the action of the probate court, or to interfere with due administration therein. While the procedure invented by the decree may be convenient, existing constitutional limitations preclude its adoption. So much of the decree as assumes to advise and direct the probate court is set aside.

IV. After hearing and after the filing of the findings by the court, the defendant moved the dismissal of the bill for lack of equitable

jurisdiction because of an adequate remedy at law, and excepted to the denial of this motion. After the controversy has without objection been fully tried by the parties, it is not the practice here to spend time in the investigation of the technical accuracy of the pleadings. If inaccurate, the error can be corrected by amendment. The objection to the form of the remedy was waived by the failure to make it before trial on the merits. *Cushing* v. *Miller*, 62 N. H. 517.

V. Barrett, the plaintiff, was permitted, subject to exception, to testify to matters as to which the defendant's intestate, if living, might have been a witness; but it appears that the defendant had previously taken the deposition of Barrett and inquired of him as to matters occurring during the lifetime and within the knowledge of Janette. By taking the plaintiff's deposition as to matters to which he could not testify against objection, the defendant made the plaintiff a witness in the case and waived the objection to his testimony. *Clark* v. *Clark*, 76 N. H. 430.

VI. The answer sets up the defence of laches and claimed the benefit of the exception by way of demurrer and the court ruled, subject to exception, as a question of law, that the right to recover the fund was not barred by the statute of limitations or by laches. The original grant of administration was made March 28, 1914. By P. S., c. 191, s. 6, an action is maintainable upon any surviving cause of action existing in favor of the deceased at his death, if brought within two years of the original grant of administration. *Brewster* v. *Brewster*, 52 N. H. 52, 59. And if the right of action does not accrue until after the death of the debtor, the statute does not begin to run until the grant of administration. *Clark* v. *Amoskeag Co.*, 62 N. H. 612. The fact that Janette held undisputed possession of the fund for over six years will not defeat the suit as matter of law.

While courts of equity follow the analogy of the statute, so that in the absence of explanatory circumstances a claim not enforceable at law because of the statute will not be allowed in equity as matter of law, the attending circumstances may induce a court of equity to refuse relief after a delay less than the limit of the statute. *Kelley* v. *Boettcher*, 85 Fed. Rep. 55, 62. Whether there has been such delay is a question of fact to be established by the defendant, but which in the absence of a finding may be conclusively established by the pleadings or the evidence. *Page Belting Company* v. *Prince*, 77 N. H. 309, 314. While the court could not say under the cir-

cumstances disclosed in *Alden* v. *Gibson,* 63 N. H. 12, that a delay of six months was unreasonable as matter of law, it was held in *Chamberlain* v. *Lyndeborough,* 64 N. H. 563, that a delay of three months unexplained was, under the circumstances of that case, fatal to the maintenance of the proceedings.

.Although the bill alleges the existence of creditors, it is not found that there are any. Zoe, John's daughter, is the only person interested and she is the real plaintiff. It appears that she knew of the deposit in Janette's name during her father's lifetime. The facts reported indicate that she and Janette both regarded the deposit as Janette's after his death, or at least as subject to Janette's possession and control. Zoe received a portion of the fund from Janette and did not object, so far as appears, to her refusal to give her more. She made no claim to any more of the fund until after Janette's death. There is no explanation of this delay and in the absence of explanatory circumstances it would be inequitable to permit her now to come in and make a claim which she forbore to make while Janette was alive to answer it.

VII. The prayer of the bill is that a resulting trust be decreed in favor of the estate of John and that Cady be ordered to pay the funds to the plaintiff.

It is found as a fact that the silverware belonged to John. In the absence of any finding that John had parted with his title thereto, this finding would authorize a decree requiring its delivery to the plaintiff. That the $1,000 was originally John's property is conceded by the pleadings; that it was deposited in the bank in Janette's name with his assent is not disputed. Whether this was done as a gift or payment to his wife, or with the understanding that John retained the whole beneficial interest was the fact in dispute. This fact is not distinctly found. If when the title was created in the wife both understood the money was to remain the property of the husband, a trust in the deposit for John's benefit would result by implication of law. *Crowley* v. *Crowley,* 72 N. H. 241, 243. If Janette agreed, as alleged in the bill, to hold the money in trust for John, there would be an express trust, which, real estate not being in question, could be proved by parol. 1 Perry on Trusts, *s.* 86. But it does not seem necessary to discuss the learning upon the subject of trusts. The money was John's; whether, when it was turned over to Janette, the beneficial title remained in John or whether he had merely a claim against her upon her promise expressed or implied to return it upon demand, does not seem important upon

the facts.    In either event the plaintiff would now be entitled to the money.    His right to it on either ground depends upon the understanding of the parties at the time.    The fact that the money was John's before it was turned over to his wife is not evidence of the plaintiff's title.    The mere payment from one to another of a sum of money is not evidence of a promise of repayment, *Fall* v. *Haines,* 65 N. H. 118, and consequently there is no presumption the payer retained any beneficial interest in the money.    In such case there is no presumption of law that the transaction was not intended as the payment of a debt or as a gift, even when it takes place between husband and wife.    *Coburn* v. *Storer,* 67 N. H. 86.    A payment to or for one for whom the payer is under some natural, moral or legal obligation to provide is ordinarily presumed to be made to benefit such person.    1 Perry on Trusts, s. 143; *Dickinson* v. *Davis,* 43 N. H. 647.

The only facts found tending to overcome the natural presumption of gift or payment arising from the transaction and the inferences deducible from the subsequent conduct of Zoe and Janette is that John and Janette "agreed between them that the money should be deposited in the Gorham Bank in Janette's name for convenience of John, because he was in poor health; and that he had planned to go to Portland, Me., where he expected to buy a lodging house, in which event he would use the money deposited in Janette's name to pay for it."    This was the evidence of the plaintiff, Barrett, who testified that he learned this from overhearing John and Janette talking the matter over about three weeks before John died, the finding being that Barrett's testimony correctly stated the arrangement between John and Janette whereby the money was to be deposited in her name.    Barrett further testified that John did go to Portland for the purpose of looking over a lodging house shortly after the deposit was made but returned without buying it and died the following June, though it is not found that in this respect the fact was as Barrett states.

The defendant objects that Barrett's testimony did not authorize the finding.    The deposit was made March 2, John died June 17, hence the talk which he overheard must have taken place the latter part of May nearly three months after the transaction. It was a history of the event not a part of it.    What John said was of course immaterial unless assented to by Janette.    What she said, expressly or by way of assent, would be material as an admis-

sion against her title; but the evidence is not what either said, but merely of the conclusions of the witness. But it does not appear that this was the sole evidence tending to establish the arrangement found. The conclusion that Barrett's statement was correct may have been supported by other evidence; and, until it is found there was no other evidence, the question of the sufficiency of Barrett's evidence alone to authorize the finding is not presented.

The defendant contends that the agreement between John and Janette that the money should be drawn out and used to purchase a lodging house does not necessarily tend to show that the money was John's rather than Janette's; she might, it is urged, agree to such use of it without affecting her title in case it should not be so used. Neither, it is said, does the fact that it was so deposited for the convenience of John because he was in poor health necessarily establish his beneficial interest in what he did not find it convenient to use because it may have been considered a convenient way of ensuring to his wife the possession, ownership and control of what he did not require for his own use.

From the evidence, it might be found that the use intended was the use made by Janette and assented to by Zoe. But questions of fact are for the superior court. The decree that $700 of the fund belonged to John's estate may have been intended as a finding of fact rather than as a ruling of law. But it is not the practice here to attempt by construction to ascertain the meaning of a case reserved. *Walker v. Railroad*, 71 N. H. 271.

No decree has been made ordering the delivery of the property in dispute or the payment of the fund to Barrett. As to the money, such decree cannot be made on the findings as they stand. As to the savings bank deposit, the bill should be dismissed unless facts appear sufficiently explaining Zoe's delay in making claim thereto and it be found that at the time of the deposit it was understood between the parties that Janette took no title to it. Whether there should be further hearing will be determined in the superior court.

*Case discharged.*

All concurred.