556 A.2d 1167

**W. Edward CLARK**

v.

**Anne H. STRASBURG, Personal Representative of the Estate of Margaret H.S. Clark.**

**No. 1298, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

May 2, 1989.

See also 312 Md. 710, 542 A.2d 378.

Robert S. Selzer (Carlton T. Obecny and Caplan, Wechsler, Selzer & Buckner, Chartered on the brief), Bethesda, for appellant.

Richard E. Jordan (Sherman, Meehan & Curtin, P.C. on the brief), Washington, D.C., for appellee.

Argued Before GILBERT, C.J., and BISHOP, and FISCHER, JJ.

GILBERT, Chief Judge.

Margaret Strasburg and Edward Clark met in Montgomery County in the late 1950's when he purchased a plot of land from her. They were married in 1960 after they divorced their respective spouses. Margaret Clark's first marriage produced three children. Edward Clark's first marriage produced two children. Some time after the Clarks's marriage, Margaret expressed a desire that the Clarks arrange their estates so as to protect their children's interests. Thus began a flurry of activity involving estate planning, oral promises, property transfers, and the execution of several wills.

After the Clarks met with an estate planner, Mr. Clark transferred his interest in the parties' marital residence to Mrs. Clark solely, and Mrs. Clark in turn transferred her interest in an apartment building to Mr. Clark. Both properties had been previously held by the Clarks as tenants by the entireties. The transfers were based on an oral agreement reached by Mr. and Mrs. Clark. The terms of that agreement were that, if Mrs. Clark predeceased Mr. Clark, he was to receive a life estate in the marital residence. All maintenance, mortgage, and taxes on that property were to be paid from Margaret Clark's estate. For her part, Mrs. Clark was to receive a life estate in the income from the apartment building in the event Mr. Clark predeceased her.

Mr. Clark in 1981 admitted to Mrs. Clark that he had engaged in a brief extramarital affair. He ended the affair, and the Clarks's marriage continued apparently without discord. As Edward Clark was to learn later, however, "Heaven has no rage like love to hatred turned, [n]or hell a fury like a woman scorned."[1]

---

1. William Congreve, "The Mourning Bride," Act III, Sc. 8 (1697).

In 1982 Mrs. Clark retained Richard Poulson, an attorney associated with the law of firm Hogan & Hartson, for the purpose of revising the Clarks's wills. She met alone with Poulson and requested that Poulson draft wills for both Clarks. Margaret Clark's will left nothing to Mr. Clark, yet Edward Clark's will left the bulk of his estate in trust for Mrs. Clark's benefit. Mr. Clark's first meeting with Poulson occurred the day he and Mrs. Clark executed those wills. At that meeting, Mr. and Mrs. Clark also signed forms waiving their rights of election under Md. Est. & Trusts Code Ann. § 3–203 (1974). Edward Clark testified at trial that he never saw a copy of his wife's will, and that he signed the waiver form because Poulson advised him to do so.

Poulson, again at Margaret Clark's behest, drafted a new will for Mr. Clark in 1985. That will included a statement acknowledging that Mr. Clark had no interest in the marital residence.

Margaret Clark died in 1986. Some time thereafter Anne Strasburg, Mrs. Clark's daughter and personal representative, informed Mr. Clark that he must vacate the marital residence. Mr. Clark filed a spousal election pursuant to Md. Est. & Trusts Code Ann. § 3–203 (1974). Ms. Strasburg then had all of the personal property in the house removed. A legal battle between Ms. Strasburg and Mr. Clark ensued.

A jury trial was held in the Circuit Court for Montgomery County to determine whether Mr. Clark had a right to possession of the Clarks's residence and a right to elect a spousal share in his wife's estate. The jury, by special verdict, found that Edward Clark executed a spousal election waiver as a result of undue influence and in reliance upon false representations made by Margaret Clark. The jury also found that Mr. and Mrs. Clark entered into an oral contract, still in effect at her death, granting him a life estate in the marital residence. The chancellor denied appellant's request for specific performance of the life estate.

Edward Clark asks this Court to determine:

I. Whether the trial court erred in ruling that the testimonial restrictions of the dead man's statute were not waived by appellee's pre-trial deposition of and interrogatories to Mr. Clark and appellee's cross-examination of Mr. Clark at trial.

II. Whether the trial court erred in refusing to enforce specifically Mr. Clark's life estate in the Clarks's residence.

## I.

Maryland's dead man's statute provides:

"A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee as such, in which a judgment or decree may be rendered for or against them, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead unless called to testify by the opposite party, or unless the testimony of the dead or incompetent person has been given *already in evidence* in the same proceeding concerning the same transaction or statement."

Md.Cts. & Jud.Proc.Code Ann. § 9–116 (Repl.Vol.1984) (emphasis supplied).

Mr. Clark maintains that the restrictions of the dead man's statute were waived when Ms. Strasburg's counsel questioned him in deposition and interrogatories about transactions with Mrs. Clark. Apparently, this precise issue has been raised in a Maryland appellate court only once prior to the instant case. In *Lapelosa v. Cruze*, 44 Md.App. 202, 407 A.2d 786 (1979), we held that it had not, however, been preserved. Consequently, the matter reaches us in virginal form for decision.

The purpose of the dead man's statute is "to equalize the position of the parties by imposing silence on the survivors as to transactions with or statements by the decedent...." *Reddy v. Mody*, 39 Md.App. 675, 679, 388 A.2d 555 (1978).

We recognized in *Reddy* that the dead man's statute can create an injustice to the survivor and, therefore, we have sought to construe it strictly. 39 Md.App. at 681–82; *see also* C. McCormick, *Evidence,* § 65 (2d ed. 1972). Obviously, the goal of the court is "to disclose as much evidence as the rule will allow" while "preventing self-interested perjury." *Reddy,* 39 Md.App. at 679, 682, 388 A.2d 555.

Some jurisdictions have held that the taking by the decedent's estate of a deposition or submission of interrogatories of a party constitutes a waiver of the dead man's statute's testimonial restrictions. *Smith v. Clark,* 219 Ark. 751, 244 S.W.2d 776 (1952); *McClenahan v. Keyes,* 188 Cal. 574, 206 P. 454 (1922); *Golder v. Golder,* 102 Kan. 486, 170 P. 803 (1918); *Fant v. Fant,* 173 Miss. 472, 162 So. 159 (1935); *Watkins v. Watkins,* 397 S.W.2d 603 (Mo.1965); *Hayes v. Ricard,* 244 N.C. 313, 93 S.E.2d 540 (1956); *Barrett v. Cady,* 78 N.H. 60, 96 A. 325 (1915); *Cox v. Gettys,* 53 Okl. 58, 156 P. 892 (1916); *Perlis v. Kuhns,* 202 Pa.Super. 80, 195 A.2d 156 (1963); *Thomas v. Irvin,* 90 Tenn. 512, 16 S.W. 1045 (1891); *Wyatt v. Chambers,* 182 S.W. 16 (Tex. 1915); *Stewart v. Conrad's Administrator,* 40 S.E. 624 (Va.1902); *Carter v. Curlew Creamery Co.,* 16 Wash.2d 476, 134 P.2d 66 (1943); *Woodyard v. Sayre,* 90 W.Va. 547, 111 S.E. 313 (1922).[2] Those "pro-waiver" jurisdictions have concluded that it is unjust to permit a party to obtain the benefits of discovery, learning the position of the adversary, and then reject the result if it is unfavorable.

Other jurisdictions have held that there is no waiver unless the deposition or interrogatories are offered or introduced into evidence. *Jones v. Jones,* 245 Ala. 613, 18 So.2d 365 (1944); *Starkweather v. Conner,* 44 Ariz. 369, 38 P.2d 311 (1934); *Gottesleben v. Luckenbach,* 123 Colo. 429, 231 P.2d 958 (1951); *Small v. Shure,* 94 So.2d 371 (Fla.1957); *Thomas v. Thomas,* 83 Idaho 86, 357 P.2d 935 (1960); *Pink v. Dempsey,* 350 Ill.App. 405, 113 N.E.2d 334 (1953); *Plum-*

---

**2.** *See generally* Annot., 23 A.L.R.3d 390, §§ 3 and 6 (1969). *See also* Annot. 35 A.L.R.3d 956 (1971).

*mer v. Ulsh*, 248 Ind. 462, 229 N.E.2d 799 (1967); *Hamilton v. Bethel*, 256 Iowa 1357, 131 N.W.2d 445 (1964); *Arrington v. Sizemore*, 241 Ky. 171, 43 S.W.2d 699 (1931); *Koenig v. Lake Shore, Inc.*, 376 Mich. 131, 136 N.W.2d 9 (1965); *O'Neal v. First Trust Co.*, 160 Neb. 469, 70 N.W.2d 466 (1955); *Williams v. Vreeland's Exrs.*, 30 N.J.Eq. 576 (N.J. 1879); *Re Garland's Will*, 97 N.Y.S.2d 442 (N.Y.1950); *Re Renee*, 159 Ohio St. 37, 110 N.E.2d 795 (1953); *Clayton v. Ogden State Bank*, 82 Utah 564, 26 P.2d 545 (1933); *Re Ford's Estate*, 23 Wis.2d 60, 126 N.W.2d 573 (1964); *Slover v. Harris*, 77 Wyo. 295, 314 P.2d 953 (1957).[3] The rationale underlying the holding of "anti-waiver" jurisdictions is that a personal representative should not be forced to choose between forfeiting utilization of the dead man's statute or of discovery.

■ We adopt the so-called "anti-waiver" position because we think it is the sounder of the two views. We hold, therefore, that a waiver does not occur unless the deposition or interrogatories are offered or introduced into evidence. Our view is compatible with Maryland case law regarding the prior testimony exception to the statute. In *Keyser v. Warfield*, 103 Md. 161, 63 A. 217 (1906), the defendant, Keyser, testified at trial with respect to a contribution due to Warfield on a note. On appeal a judgment for the plaintiff was reversed, and a new trial was ordered. Keyser died before the second trial was held. That trial also resulted in a judgment for the plaintiff, and the defendant's estate appealed. The Court held that Warfield was not competent to testify at the second trial unless Keyser's testimony from the first trial was actually admitted into evidence at the second trial. *Keyser*, 103 Md. at 171, 63 A. 217.

The "anti-waiver" holding is also consistent with the statute's purpose of preventing self-interested perjury since

---

3. See footnote 2.

the deposition and interrogatories in the instant case were not introduced into evidence.

Additionally, the "anti-waiver" position accords with the Maryland Rules governing the objectives of discovery. Md. Rule 2–419(e) provides in part, "A party does not make a person that party's own witness by taking the person's deposition." The rules permit liberal discovery to litigants. *See* Md.Rule 2–402. We perceive no reason why discovery by or against personal representatives should be artificially constricted.

■ Mr. Clark next contends that the cross-examination of him at trial constituted a waiver of the dead man's statute. The testimony at issue in the instant matter involved the nature and scope of Mr. Clark's understanding of the will and the spousal waiver. His counsel sought to demonstrate that appellant did not comprehend the content or significance of those documents partly because he was not the person who arranged for them to be written. Counsel sought to show that Mr. Clark inferred that the documents presented to him by his late wife and Mr. Poulson represented the estate plan he and his wife had discussed. The focus of the inquiry was Mr. Clark's state of mind at the time of the execution of the waiver and will.

■ The trial judge ruled that no waiver occurred during Ms. Strasburg's counsel's cross-examination of Mr. Clark. The judge concluded that appellee's counsel came "awfully close" to opening waiver's door. The record reflects:

"[Appellee's Counsel]  Q.  Mr. Clark, isn't it a fact that she suggested to you what you should do?

[Mr. Clark]  A.  She suggested, and I accepted her suggestions.

Q.  By the time you accepted the suggestions, it was an agreement, a joint common plan, isn't that so?

. . . .

Q.  Before the October 21st meeting, you had discussed with Margaret what was going to happen with the will, isn't that true?

A. With mine.

Q. She told you what was going to happen with hers?

A. No, she did not."

A waiver of the dead man's statute may occur when an adverse party is cross-examined regarding transactions with the decedent. *Trupp v. Wolff*, 24 Md.App. 588, 602, 335 A.2d 171 (1975).

We recognize that counsel for both parties "walked a tightrope" in attempting to elicit from Mr. Clark whether he understood the will and waiver while, at the same time, avoiding the transgression of the dead man's statute. The judge did not abuse her discretion in ruling that appellee's counsel had successfully walked the tightrope.

## II.

■ Mr. Clark claims that the trial judge erred in refusing to enforce specifically the life estate granted him by Mrs. Clark in the 1971 oral agreement. Ms. Strasburg, on the other hand, asserts that the trial judge erred in finding that the oral contract was valid.

*Unitas v. Temple*, 314 Md. 689, 552 A.2d 1285 (1989), is dispositive of Ms. Strasburg's contention that Mr. Clark's part performance of the oral contract did not meet the requirements of the exception to the statute of frauds.

An oral contract for the transfer of an interest in real property is ordinarily unenforceable at law in Maryland because it is barred by the statute of frauds:

"No action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or some other person lawfully authorized by him."

Md.Real Prop.Code Ann. § 5–104 (1974). Nevertheless, the part performance may create an exception in equity to the statute of frauds with respect to the enforcement of an oral

contract. Writing for a unanimous Court in *Unitas,* Judge Rodowsky penned:

"By a course of judicial development, the statute has become inapplicable in [part performance] cases, in spite of the fact that they are clearly included within its words. Part performance of a contract for the transfer of land does not take the case out of the statute; but it may be of such a character that it will take the statute out of the case."

*Unitas,* 314 Md. at 689, 552 A.2d 1285. quoting A.L. Corbin, *Corbin on Contracts,* § 420 (1950).

■ Mr. Clark avers that the conduct which constituted part performance in the instant case was the mutual transfer of property that resulted in sole ownership by the decedent of the marital home. In order for an oral contract to be enforceable, "part performance must be such as [to] show that some contract exists between the parties; that they were done in pursuance thereof, and that it is not inconsistent with the one alleged in the pleading." *Unitas,* 314 Md. at 708, 552 A.2d 1285, quoting J. Pomeroy, *Specific Performance of Contracts* § 107 (3d ed. 1926). The part performance doctrine contemplates a "but-for" test—the actor would not have performed the act *but for* the contract. *Hamilton v. Thirston,* 93 Md. 213, 219, 48 A. 709 (1901). Mr. Clark met the burden of establishing that he transferred property to Margaret Clark because of the oral agreement's existence. We perceive no error by the trial judge in finding that Mr. Clark's part performance removed the oral agreement from the ambit of the statute of frauds.

"Specific performance is ... an extraordinary equitable remedy which may be granted, in the discretion of the chancellor, where more traditional remedies, such as damages, are either unavailable or inadequate." *Archway Motors v. Herman,* 37 Md.App. 674, 681, 378 A.2d 720 (1977).

Inasmuch as the jury found that the waiver Mr. Clark executed was invalid, he was entitled by law to his elective share of his deceased wife's estate.

■  The trial judge ruled that the Clarks did not intend, as part of their oral contract, that Mr. Clark receive both an elective share in Mrs. Clark's estate *and* a life estate in the marital residence.  We are unable to find any evidence in the record to support that conclusion.  Moreover, it is clear that Mr. Clark had a contractual right, having performed his part of the agreement, to receive the life estate promised him.  We believe the trial judge erred in refusing to enforce specifically the life estate granted Mr. Clark by his wife in 1971.

The trial judge granted judgment in favor of appellee in an amount equivalent to the rent Mr. Clark received for the property after Mrs. Clark's death. Inasmuch as we have reversed the judgment with respect to the life estate, it is transpicuous that the monetary award must be and is reversed.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.

COSTS TO BE EQUALLY DIVIDED BETWEEN THE PARTIES.