573 A.2d 1339

**Anne H. STRASBURG, Personal Representative of the Estate of Margaret H.S. Clark**

v.

**W. Edward CLARK.**

No. 81, Sept. Term, 1989.

Court of Appeals of Maryland.

May 31, 1990.

Elliott Andalman (Susan Silber, Law Offices of Susan Silber, all on brief), Takoma Park, for petitioner.

Robert S. Friedeman (Anthony C. Morella, Hewes, Morella Gelband & Lamberton, P.C., all on brief), Washington, D.C., for respondent.

Before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and CHASANOW *, JJ., and CHARLES E. ORTH, Jr., Retired, Specially Assigned Judge.

RODOWSKY, Judge.

In this case the trial court denied a surviving spouse who had elected an intestate share in the deceased spouse's estate equitable enforcement of an oral contract to devise an interest in realty. After concluding that the contract did not limit the electing spouse, the Court of Special Appeals reversed. *Clark v. Strasburg*, 79 Md.App. 406, 556 A.2d 1167 (1989). As explained below, we agree with the chancellor.

---

* Howard S. Chasanow, formerly a judge of the Seventh Judicial Circuit, was specially assigned to the Court of Appeals at the time this case was argued. He was sworn in as a judge of this Court on 17 January 1990.

Petitioner, Anne H. Strasburg, is the personal representative of the estate of her mother, Margaret H.S. Clark (Margaret), who died May 19, 1986. Margaret was survived by her husband, the respondent, W. Edward Clark (Edward), and by three children. Margaret and Edward had married in 1960. It was the second marriage for each. Margaret's surviving children were children of her first marriage. Edward had two sons by his prior marriage.

Among the Clarks' principal assets as of the autumn of 1970 was jointly held realty in Montgomery County, Maryland, consisting of a residence at 6671 McArthur Boulevard (the Residence) and a thirty-six unit apartment building at 4570 McArthur Boulevard (the Apartments). The case now before us involves Edward's claim to a life estate in the Residence based upon an oral agreement made with Margaret in 1970. Edward was precluded from testifying about this transaction by the "Dead Man's statute," Md.Code (1974, 1989 Repl.Vol.), § 9–116 of the Courts and Judicial Proceedings Article. Edward's prime witness for establishing the oral agreement was David Horgan (Horgan), who testified that he was present when the oral agreement was made on the night before Thanksgiving 1970.

Horgan is a chartered life underwriter. Beginning as early as 1965, he and the Clarks had been discussing estate planning with insurance funding for tax payments. By the fall of 1970 Horgan had developed a "comprehensive plan" the goals of which he described as: "One, to aim the bulk of the properties in the estates, both Margaret's and Ed's, at ... their respective children," and, secondly, to achieve maximum estate tax savings. Horgan "recommended that the joint titles be broken apart and that the [R]esidence be titled in Margaret's name alone and that the [A]partment[ ] be titled in Ed Clark's name alone, but with a retained life estate in the income from that apartment house for Margaret Clark and a retained life estate in the house as a residence for Ed, in the event Margaret should die before him." The agreement was to "be reduced in some fashion to writing" by Walter N. Tobriner, Esq. (Tobriner), counsel

for the Clarks. "[U]ltimately the properties that were Ed's were to go to his two children and the properties that were Margaret's, after the death of both of them, were to go to Margaret's three children." Horgan also testified that the Clarks agreed that, absent mutual agreement, neither would substantially change that spouse's will, even if they were divorced. He testified that, should the Clarks be divorced and Edward then predecease Margaret, Edward was willing for Margaret to have the income from the Apartments, or from the proceeds of any sale of the Apartments, for her life, because Margaret's income from assets in her own name was insufficient to maintain her standard of living. Horgan further testified that, should the Clarks be divorced and then Margaret predecease Edward, Margaret was willing for Edward to have a life estate in the Residence, because he would need a place to live. Horgan said that he and Tobriner had agreed not to use mutual marital deduction wills, but to effect the estate tax saving by retitling the two pieces of realty.[1]

In December 1970 Margaret revoked her will, executed in 1966, but did not contemporaneously execute a new will. Horgan explained that it would be less costly from a tax standpoint were Margaret to die intestate than to have her then will become effective.

By deeds dated January 15, 1971, fee simple title to the Residence was conveyed to Margaret and fee simple title to the Apartments was conveyed to Edward. That same date the Clarks each executed wills. Margaret's will devised the Residence in trust to permit Edward to occupy it "rent free and free from taxes and costs of repairs" for his life. The Residence could be sold with Edward's consent in which event he would receive the income from the proceeds for life. The residue of Margaret's estate, including the remainder after the life estate, was devised in trust in equal

---

1. Tobriner died July 14, 1979. His file on the Clarks' wills was introduced into evidence. The file contains correspondence with Horgan and Horgan's computations of estimated tax liabilities.

shares for the benefit of Margaret's three children and their issue. Edward's January 1971 will devised the Apartments in trust for the benefit of Margaret for life and thereafter to Edward's two sons. Edward left the residue of his estate to Margaret.

Edward apparently made a new will on August 31, 1977. This will created a trust which would operate the Apartments for 540 days after Edward's death. If, during that period, Edward's sons paid Edward's sister Edward's indebtedness to her and also paid Margaret $55,000 (a figure expressly inclusive of Edward's indebtedness to Margaret), then the Apartments were to be conveyed free of trust to Edward's sons and the wife of one of them. If Edward's sons did not pay the sums as provided, the trustees were to convey the Apartments outright to Margaret.[2]

Margaret also executed, on August 31, 1977, a new will prepared for her by Tobriner. Under this will, in the event Edward survived Margaret, Margaret devised the Residence in trust to permit Edward to live in it "rent free, for as long as he shall desire." The property could be sold only with the consent of Edward who would then receive for life the income on the sale proceeds. Upon Edward's death the trustees were to convey the Residence absolutely to Margaret's three children in equal shares.

In 1979 Edward converted the Apartments to a condominium regime. He invested the proceeds from the sales of the

---

2. Edward has moved to dismiss the petitioner's appeal because her brief in chief refers to this August 31, 1977, writing. Edward asserts that petitioner "has intentionally appended to her Brief a document that is not in the record and is not in the Record Extract...." Appellee's Motion at 1. The document is part of the original record. Tobriner's entire file, containing this document, was introduced by the defendant, Edward, as an exhibit. The document was also introduced as one of the exhibits attached to the deposition of the custodian of Tobriner's file. That deposition was introduced as a plaintiff's (petitioner's) exhibit. Accordingly, the motion to dismiss is denied. Petitioner's motion for sanctions, which is predicated only on Maryland Rule 1–311 is also denied, under both Rules 1–311 and 1–341.

units in limited partnerships engaged in oil and gas exploration.

For approximately three months during 1979, while Margaret was in Europe with one or more of her children, Edward had an affair with a woman who resided at the Apartments. Edward broke off the relationship and told Margaret about it.

In October 1981 the Clarks again respectively executed new wills which were prepared by Janet Brenner, Esq. Under Margaret's will, dated October 13, Edward received nothing. Margaret's entire estate, but for $6,000 in specific bequests, was left to, or for the benefit of, her children. Her trustee, the petitioner, was directed to sell the Residence "as soon as is reasonably possible, at least within two years[.]" Edward's will, dated October 14, made specific bequests of $50,000 to each of his two sons, made other bequests totalling approximately $40,000 and gave the residue to Margaret in fee simple, conditioned on her surviving Edward. Otherwise, the residue was given to Edward's sons.

On August 19, 1982, Margaret, bearing all of the relevant documents, and unaccompanied by Edward, was in the Washington, D.C. offices of Hogan and Hartson consulting with Richard J.M. Poulson, Esq. (Poulson) concerning both her and Edward's wills. She left with Poulson the Clarks' financial statements as of May 31, 1981. Edward's net worth was approximately $1.3 million. His assets included $426,000 in oil and gas leases and $328,000 secured by a mortgage on the Apartments, which was due to him from his wholly owned corporation which was the vehicle for the condominium conversion. Margaret's assets totaled $785,-000, of which $500,000 represented the valuation placed on the Residence. Her $35,000 in liabilities consisted entirely of the mortgage on the Residence.

On November 8, 1982, the Clarks respectively executed new wills in Poulson's offices. This 1982 will became Margaret's operative will on her death on May 19, 1986.

That will followed substantially the disposition scheme of the 1981 will. Edward was cut off. Margaret's estate, including the Residence, was given to or for the benefit of her children. That plan was contrary to the advice of Poulson set forth in a September 13, 1982, memorandum to the Clarks which was hand delivered to Margaret. In that memorandum Poulson warned that if Edward survived Margaret significant federal estate tax liability would be incurred. Poulson also testified that the memorandum and draft wills which accompanied it were discussed at a meeting of the Clarks, himself and his associate at Hogan and Hartson on October 21, 1982.

In his 1982 will Edward reduced the special bequests for his children to $25,000 each. If Edward predeceased Margaret the residue of Edward's estate was to be divided into two trusts. The first, consisting of an amount equal to the maximum marital deduction, was for Margaret for life with the residue subject to a testamentary power of appointment in Margaret and, in default of appointment, to Edward's issue. The second share, consisting of the balance of the residue, was given in trust for Margaret for life and thereafter to such of Edward's surviving issue as Margaret might designate by a testamentary power of appointment.

At the November 8, 1982, meeting at which the wills were signed Edward and Margaret each also executed and acknowledged waivers of their respective rights, conferred by Md.Code (1974), § 3–203 of the Estates and Trusts Article (ET), to renounce the other's will and to elect a spouse's share in intestacy.[3] Edward testified that he had not seen

---

**3.** Md.Code (1974), § 3–205 of the Estates and Trusts Article deals with waivers of the right to renounce and reads:

"The right of election of a surviving spouse may be waived before or after marriage by a written contract, agreement, or waiver signed by the party waiving the right of election. Unless it provides to the contrary, a waiver of 'all rights' in the property or estate of a present or prospective spouse, or a complete property settlement entered into after or in anticipation of separation or divorce, is a waiver of any right to his family allowance as well as to his elective share by each spouse in the property of the spouse, his right to

Margaret's 1982 will, or the September memorandum from Hogan and Hartson, and that Margaret did not discuss her will with him. He further said that he had never heard of a spousal election and had had no discussions with any attorney regarding spousal waivers. This testimony was contradicted.

Between 1982 and 1985 the value of Edward's oil and gas investments declined, as he characterized it, to "almost nothing."

Edward made another will on April 8, 1985. It was prepared by Poulson. That will reduced the specific bequests to Edward's sons to $10,000 each. The 1985 will is a marital deduction will following the disposition plan of Edward's 1982 will. Edward's 1985 will, however, contains a new paragraph at the end of the article setting forth specific bequests. That paragraph reads:

"I acknowledge that neither I nor any heir of mine nor any person claiming through me has any interest whatsoever in the residence and adjoining real estate located in Bethesda, Maryland, titled in the name of my wife, MARGARET H.S. CLARK."

The instructions to counsel for Edward's 1985 will included longhand interlineations on a draft of what became Edward's 1982 will. Edward testified that he made, or at least signed his name next to, each of the interlineations which indicated reduced amounts for specific bequests. He testified, however, that the longhand version of the above-quoted provision which appears on that same draft was written in Margaret's handwriting. Edward gave evidence that, when he executed the 1985 will, he read only the paragraphs in which the changes in specific bequests were made and that he did not notice the above-quoted language.

---

letters under § 5–104, and is an irrevocable renunciation of any benefit which would pass to him from the other by intestate succession, by statutory share, or by virtue of the provisions of a will executed before the waiver or property settlement."

After Margaret's death, Edward remained in the Residence. Petitioner brought an action in the District Court of Maryland against Edward for repossession of the premises. Edward removed that action to the Circuit Court for Montgomery County by a demand for jury trial. In the circuit court Edward counterclaimed, seeking, *inter alia,* equitable enforcement of the oral contract and damages for its breach. Hostilities also broke out in the Orphans' Court for Montgomery County where Edward filed a renunciation of Margaret's will and elected to take a spousal share—in this case, one-third of the estate. Petitioner countered the renunciation with Edward's written waiver of any right to renounce, and Edward replied that the waiver was invalid. Issues were framed by the orphans' court and transmitted for trial before a jury in the circuit court. The issues from the orphans' court and the repossession action, with counterclaim, were consolidated for trial.[4]

Edward's demand for jury trial in the District Court case was effective "as to all issues triable of right by a jury," including his claims asserted in the counterclaim. Maryland Rule 2-325(c) and (e). On the issues from the orphans' court the jury found that Edward's waiver of the right to renounce was ineffective due to undue influence and false representation of a material fact. In addition to the transmitted issues the trial judge submitted certain special interrogatories to the jury. Among the answers to those interrogatories the jury found that there was in effect between Edward and Margaret at the time of Margaret's death a contract which provided for a life estate for Edward in the Residence.

---

4. A third action in which Edward alleged that the petitioner had converted certain of Edward's personalty was also consolidated. That conversion action was duplicated by one of the claims in Edward's counterclaim. The conversion dispute was settled during the course of trial.

A prior appeal heard by this Court, arising from the orphans' court front of the conflict and involving an issue collateral to that before us, is *Clark v. Strasburg,* 312 Md. 710, 542 A.2d 378 (1988).

Any possibility of conflict between the jury's finding of this contract and any finding which the chancellor might have made with respect to Edward's claim for equitable relief was mooted when the chancellor agreed that there was a contract. *Cf.* Md. Rule 2–301; *Higgins v. Barnes,* 310 Md. 532, 530 A.2d 724 (1987). The trial court further found that there was sufficient part performance to permit enforcement of the oral contract, even though it was within the statute of frauds.[5] The court reserved ruling on the claim for equitable relief.

At a subsequent hearing the circuit court refused to require petitioner to recognize Edward's claimed life estate in the Residence. At times the chancellor spoke of Edward's having breached the oral contract. Edward's analysis of the rationale is that "Judge [Rosalyn] Bell declined to order specific performance of the 1970 oral contract for one reason and one reason only—her belief that it would be somehow 'inequitable' for Mr. Clark to have the benefit of both the 1970 oral agreement and his statutory election...." Respondent's Brief at 26.

In findings made from the bench after the jury verdict, the trial judge had said, in part:

"[W]hen Mr. Clark took against the will by the renunciation ... that, in effect, ... amounted to removing from the children, one-third of the fee, which is in violation of the terms of the contract that the parties had agreed to.

....

"Mrs. Clark, on the other hand, ... wanted her assets ... the balance of her assets, including her stock ... she wanted these things for her children.

....

"We often say, 'he who seeks equity must do equity'.... But basically what Mr. Clark wants is to have it both ways...."

---

**5.** Edward does not contend that there is any written memorandum which satisfies the statute of frauds.

In a written opinion explaining the denial of Edward's motion to alter judgment, the trial judge explained the inequity of Edward's position in the following fashion:

"The chancellor finds that the agreement of the parties as proposed by David Horgan required some means of implementation. The parties agreed on the wills of 1971. The 1971 will, which spelled out the parties' agreement in conjunction with the property, provided a life estate of the real estate for Mr. Clark and a gift over to the children of Mrs. Clark. Mr. Clark neither testified to a different intent, proffered that there was a different intent, nor did he deny the 1971 will was the specification of their agreement. In fact, Mr. Clark testified that he knew in 1971 that Mrs. Clark's children were to receive the property. If Mr. Clark had elected against the 1971 will, he would have lost the benefit of all provisions for him under the will, specifically, the life estate. The chancellor finds it would be inequitable to permit Mr. Clark to secure now, under the 1982 will, what he would not have secured under the 1971 will."

Both parties appealed to the Court of Special Appeals.[6] The Court of Special Appeals rejected the trial court's analysis, reasoning as follows:

---

**6.** In a related holding on Edward's claim for money damages at law for breach by Margaret of the oral agreement, the circuit court found that Margaret had breached the agreement but that Edward had failed to prove any damages. The court entered judgment for $1.00 nominal damages in favor of Edward against the petitioner. Neither party questioned that judgment in the cross appeals to the Court of Special Appeals and there is no issue in the certiorari petition concerning the $1.00 judgment.

We note, however, that the part performance doctrine, as applied to "any contract for the sale or disposition of land or of any interest in or concerning land," Md.Code (1974, 1988 Repl.Vol.), § 5–104 of the Real Property Article, applies only in equity and not at law. *See Stevens v. Bennett,* 234 Md. 348, 199 A.2d 221 (1964); *Mangione v. Braverman,* 234 Md. 357, 199 A.2d 225 (1964); *Fitzpatrick v. Michael,* 177 Md. 248, 9 A.2d 639 (1939); *Ottaviano v. Lorenzo,* 169 Md. 51, 179 A. 530 (1935); *Hamilton v. Thirston,* 93 Md. 213, 48 A. 709 (1901); *Winternitz v. Summit Hills Joint Venture,* 73 Md.App. 16, 532 A.2d 1089 (1987).

"The trial judge ruled that the Clarks did not intend, as part of their oral contract, that Mr. Clark receive both an elective share in Mrs. Clark's estate *and* a life estate in the marital residence. We are unable to find any evidence in the record to support that conclusion. Moreover, it is clear that Mr. Clark had a contractual right, having performed his part of the agreement, to receive the life estate promised him. We believe the trial judge erred in refusing to enforce specifically the life estate granted Mr. Clark by his wife in 1971."

*Clark v. Strasburg,* 79 Md.App. at 416, 556 A.2d at 1172 (emphasis in original). We granted the petition for certiorari filed by Margaret's personal representative.

■ We shall assume, *arguendo*, that the oral agreement was proved with sufficient certainty and that the evidence is legally sufficient to support the trial court's conclusion that part performance permitted equitable enforcement of the oral agreement.

Whether the chancellor abused her discretion in refusing to enforce for Edward's benefit the contract to make a will, when Edward had renounced Margaret's will in order to take one-third of her estate, may be tested by asking whether, had Margaret's will conformed to the contract, Edward could take under the will and also take an elective spousal share. The equitable relief which Edward claims is a form of specific performance, designed to place him in the position he would have enjoyed had Margaret's will conformed to the contract.

"Where a promisor in an agreement to devise property has failed to meet his obligation, in whole or in part, the promisee will be given equitable relief if the contract is fair and reasonable and founded upon sufficient consideration and the parties cannot be restored to their original position. Equity grants relief in the nature of specific performance, holding the heirs, devisees, next of kin and personal representatives of the promisor to be trustees holding legal title to the property for the benefit of the promisee."

*Ledingham v. Bayless,* 218 Md. 108, 117, 145 A.2d 434, 440 (1958).

The effect of the renunciation of a will is described in E. Miller, *The Construction of Wills in Maryland* § 297, at 835–36 (1927):

> "When a widow renounces the devises and bequests in her favor, and elects to take under the law, and in opposition to the will, such devises and bequests, so far as she is concerned, utterly fail of effect, and the property intended to pass thereby remains as if no such devises and bequests had been made. In consequence of the renunciation all devises and bequests to her are annulled; and upon renunciation she is entitled to her legal share in the entire estate of the husband, including the property given to her by the devise or bequest which she has renounced."

(Footnotes omitted).

Thus, in *Weinberg v. Safe Deposit & Trust Co.,* 198 Md. 539, 546, 85 A.2d 50, 52 (1951), we said that "[w]hen a spouse renounces, he or she takes in opposition to the will and is entitled to no benefits given under such will." And *see McGehee v. McGehee,* 152 Md. 661, 670, 136 A. 905, 908 (1927) ("Appellant cannot, at the same time, take under and against the will."); *Kuykendall v. Devecmon,* 78 Md. 537, 543, 28 A. 412, 414 (1894) ("If [a widow] chooses not to accept the legacy thus offered in lieu of her dower, she takes of the estate not under the will, but in opposition. . . ."); *Durham v. Rhodes,* 23 Md. 233 (1865) (widow's acceptance of devises and bequests from late husband barred dower in decedent's after acquired realty which, under the law at the time, did not pass under the will).

These principles have now been codified. ET § 3–208(a) provides:

> "Upon the election of the surviving spouse to take his intestate share of the property of the decedent, all property or other benefits which would have passed to the surviving spouse under the will shall be treated as if the

surviving spouse had died before the execution of the will. The surviving spouse and a person claiming through him may not receive property under the will."

The comment to former Art. 93, § 3–208, following ET § 3–208, notes that the above subsection requires "the surviving spouse to renounce the entire will and prohibits him from receiving any benefits thereunder. This is declaratory of the construction of [the former statute]." ET at 62.

Consequently, Edward could not both renounce Margaret's will and claim under it. The policy of election which is now embodied in the statute guided the trial court's exercise of discretion. That court would not allow Edward to renounce Margaret's will and at the same time obtain equitable enforcement of a contract to make specific provision for him in that will which he had renounced. To reverse the chancellor's exercise of discretion would create greater rights in the promisee of a contract to make a will when that contract has been breached than are the rights of the promisee when the will conforms to the contract. We rejected a similar anomaly in *Shimp v. Huff,* 315 Md. 624, 556 A.2d 252 (1989), by declining to adopt a rule under which the promisee of a breached contract to make a will would be treated as a creditor of the estate, with a priority in distribution over legatees, but under which the promisee of an identical contract that was performed through the operation of a conforming will, would be treated as a legatee.

Edward's argument is, in substance, that ET § 3–205, *see* n. 3, *supra,* dealing with the waiver of rights in a decedent's estate, is exclusively controlling. The argument seems to be that the only way in which Edward could fail to obtain both enforcement of the contract and a full elective share would be by effective waiver of the elective share, and Edward's waiver has been found ineffective. This argument ignores the fact that Edward's election to take an intestate share is honored by the decree of the circuit court. The argument also ignores the dichotomy between taking

under a will and taking in intestacy which is effected when one makes an election, as manifested by § 3-208(a).[7]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A MANDATE AFFIRMING THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT, W. EDWARD CLARK.

---

7. A subsidiary issue is whether Edward or the personal representative is entitled to funds received from the rental of a portion of the Residence after Margaret's death while Edward was in physical possession. The circuit court entered judgment for the petitioner against Edward for that rent, because Edward's claim to a life estate in the premises was denied. Because the Court of Special Appeals reversed the circuit court and ordered enforcement of the oral contract, the Court of Special Appeals reversed the judgment against Edward for the amount of rent collected. Because we reverse the Court of Special Appeals and affirm the trial court's denial of recognition of a life estate, the judgment of the circuit court against Edward for the amount of the rent collected should be reinstated.