575 A.2d 784

**MONTGOMERY COUNTY, Maryland**

v.

**Stephen HERLIHY, Personal Representative of the Estate of Sarah Herlihy, et al.**

**No. 1616, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

June 29, 1990.

Tasha Panarites, Asst. County Atty. (Clyde H. Sorrell, County Atty. and Joann Robertson, Sr. Asst. County Atty., on the brief), Rockville, for appellant.

Edward L. Norwind (Paulson, Nace, Norwind & Sellinger on the brief), Rockville, for appellee, Herlihy.

Glenn T. Harrell, Jr. (William B. Spellbring, Jr., Timothy E. Howie and O'Malley, Miles & Harrell, on the brief), Upper Marlboro, for appellee, PEPCO.

Argued before BISHOP, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

This appeal challenges the judgment of the Circuit Court for Montgomery County, entered on a jury's verdict, finding Montgomery County, Maryland, appellant, and not Potomac Electric Power Company (PEPCO), one of the appellees herein, responsible for injuries suffered by Sarah Herlihy, the decedent, in a fall. Pursuant to the jury's verdict, appellee Stephen Herlihy, Personal Representative of the

decedent's estate, was awarded damages in the amount of $66,569.00. On appeal, appellant posits three questions:

1. Did [the motions judge] err in finding that a genuine dispute as to a material fact existed where plaintiff stated she had tripped on the sidewalk grate and PEPCO acknowledged responsibility for maintaining the grate?

2. Did [the trial judge] err in refusing to admit Sarah Herlihy's answers to interrogatories into evidence on the grounds that even though she had answered them while a party plaintiff, her subsequent death prior to trial acted as a bar to their admissibility by virtue of the Dead Man's Statute?

3. Did [the trial judge] err in refusing to apply the holding in *Clark v. Strasburg*,[1] waiving the applicability of the Dead Man's Statute and denying appellant's motion for a new trial?

We answer the second question in the affirmative and, hence, will reverse and remand the case to the trial court for further proceedings, limited, however, to the issue of liability.[2]

The decedent tripped and fell in the area of a grate embedded in a sidewalk, along which she and her employer were walking on April 3, 1985. The place where she fell was directly in front of the Chesapeake and Potomac Telephone Company; the grate in the sidewalk was owned by appellee PEPCO; and appellant was responsible for the maintenance of the sidewalk, which was cracked and uneven. The decedent injured her hip and shoulder in her fall.

Almost three years later, the decedent filed a personal

---

**1.** 79 Md.App. 406, 556 A.2d 1167 (1989), *rev'd on other grounds,* 319 Md. 583, 573 A.2d 1339 (1990).

**2.** All parties conceded that, should we find error in the court's ruling on the Dead Man's Statute, the remand should be limited to retrial of the liability issue. It was agreed that the amount of damages need not be retried.

injury action against appellant, PEPCO and C & P.[3] Appellant and PEPCO filed cross-claims. Discovery then proceeded.

Appellant propounded interrogatories to the decedent and, in turn, the decedent served interrogatories on appellant and PEPCO. As pertinent to the case *sub judice*, the questions propounded to the decedent, and her answers, are as follow:

4. Describe in as much detail as possible, in chronological sequence, everything that happened to you: (a) from the time you arrived at the premises up to and including the time of the alleged occurrence; and (b) from the time of the alleged occurrence until you were treated for your injuries.

ANSWER: I tripped over an improperly secured grating on the sidewalk in front of the PEPCO office and was then treated by the rescue squad.

5. Indicate when you first became aware of the possibility of any accident and the amount of time which elapsed between when you first noticed the potentially dangerous condition and when the accident occurred.

ANSWER: I was not aware of the dangerous condition of the grating prior to the accident.

10. Were there any obstructions to your view as you approached the scene of the accident?

ANSWER: There were no obstructions to my view, however, the condition of the grating was not patent.

Based on these answers, as well as its answers, and those of PEPCO, to interrogatories propounded to them by the decedent, appellant moved for summary judgment. By this time, the decedent had died of causes unrelated to the negligence action and appellee Stephen Herlihy, in his capacity as the personal representative of the decedent's estate, had been substituted as plaintiff. Following exten-

---

3. C & P was not a party when the issue was submitted to the jury, the parties having agreed to a dismissal as to it.

sive briefing of the issue and oral argument, the motions judge denied appellant's motion.

The case proceeded to trial before a jury. Appellant unsuccessfully sought to introduce some of the decedent's interrogatory answers into evidence. Although appellee Herlihy did not object, PEPCO raised the Dead Man's Statute as a bar to their admission and the trial court adopted that rationale for its ruling excluding them. The case having been submitted to the jury, a verdict was entered in favor of appellee Herlihy and against appellant. The jury also determined that PEPCO was not liable for the decedent's injuries. Appellant's motion for new trial was denied and this appeal followed.

### 1

Appellant's first argument is that it was entitled to summary judgment as a matter of law. This is so, it maintains, because the decedent, in answers to interrogatories, stated that she tripped over the sidewalk grate and that PEPCO admitted its responsibility for maintaining the grate, citing in that regard, PEPCO's acknowledgement, in answers to interrogatories, that it repaired the grate following the accident. Thus, appellant urges us to reverse the trial court's denial of his motion for summary judgment and, apparently, enter judgment accordingly.

We first assume that appellant is correct that the pleadings, interrogatories, affidavits, and other papers presented to the motions judge, and considered by him, would have permitted entry of summary judgment in favor of appellant; nevertheless, in the absence of a showing of clear abuse of discretion, the court's refusal to enter summary judgment in appellant's favor will not be disturbed. *See Metropolitan Mortgage Fd., Inc. v. Basiliko*, 288 Md. 25, 29, 415 A.2d 582 (1980). In that case, the issue was: "[o]n appeal from a final judgment entered following a full trial of the general issue, may the correctness of a pretrial denial of a summary judgment, other than for abuse of discretion, be reviewed?"

The trial judge denied all three of the plaintiff's motions for summary judgment and, after a non-jury trial on the merits, entered judgment in favor of the plaintiff against one, but not both, of the defendants. On appeal by the plaintiff from the judgment in favor of one of the defendants, the Court of Appeals affirmed. Recognizing that "whereas a 'court cannot draw upon any discretionary power to grant summary judgment' ... it, ordinarily, does possess discretion to refuse to pass upon, as well as discretion affirmatively to deny, a summary judgment request in favor of a full hearing on the merits; and this discretion exists even though the technical requirements for the entry of such a judgment have been met," (citing 6 PT. 2 *Moore's Federal Practice,* ¶¶ 56.15[6], at 56–601, 56.23, at 56–1390–91 (2d ed. 1980); 10 C. Wright & A. Miller, *Federal Practice and Procedure:* Civil, § 2728, at 554–55 (1973 & 1980 Supplement); *Virgil v. Time, Inc.,* 527 F.2d 1122, 1131 n. 15 (9th Cir.1975), *cert. denied,* 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976)), the Court opined:

It is essential to the entry of a summary judgment that there be no dispute as to any material fact. The procedure is not a substitute for trial, but is merely a preview to determine whether there exists a factual controvery requiring a trial.... Thus, while Md.Rule [2–501(e)] states that when a movant is entitled to judgment as a matter of law, the court should render judgment forthwith, this does not mean that entry of judgment may not be delayed until after a trial on the merits, should, in the court's mind, the promotion of justice require it.... It is our view that an appellate court should be loath indeed to overturn, on a very narrow procedural ground, a final judgment on the merits entered in favor of the party resisting the summary judgment motion. This is aptly demonstrated by the present case where, after a full evidentiary hearing, the court determined that respondents' signatures to the guarantee agreements were not genuine. To turn the tables in this manner would be

nothing short of substituting a known unjust result for a known just one.... (citations omitted)

288 Md. at 28–29, 415 A.2d 582.

The court therefore held:

> ... a denial (as distinguished from a grant) of a summary judgment motion, as well as foregoing the ruling on such a motion either temporarily until later in the proceedings or for resolution by trial of the general issue, involves not only pure legal questions but also the exercise of discretion as to whether the decision should be postponed until it can be supported by a complete factual record; and ... on appeal, absent clear abuse ..., the manner in which this discretion is exercised will not be disturbed.

*Id.*

Appellant has not demonstrated clear abuse of discretion in this case. Indeed, if an abuse of discretion argument can be attributed to appellant, it must relate to its argument that appellee "failed to properly controvert the material facts established by Appellant...." In that regard, appellant's position is simply that the only competent evidence before the court was that presented by it since the attempted controversion by appellees was unsuccessful and ineffective as a technical legal matter. As the Court of Appeals said in *Basiliko*, however, "an appellate court should be loath indeed to overturn, on a very narrow procedural ground, a final judgment on the merits...." Indeed, again as the Court said, to do so would be to substitute a known unjust result for a known just one.

Finally, the most persuasive reason for finding that appellant has not demonstrated a clear abuse of discretion is the recognition that it was not entitled to summary judgment as a matter of law, in any event. Our review of the pleadings, discovery materials, motions, etc. demonstrates that, contrary to appellant's argument, a genuine dispute of material fact was presented, which, as the court ruled, had to be resolved by trial. The court did not err in denying summary judgment.

2

Appellant, at trial, sought to read into the record the decedent's answers to interrogatories No. 4, 5, and 10. It did so pursuant to Maryland Rule 2–421(d),[4] maintaining that the answer indicating she tripped over an improperly secured grating was an admission of a party plaintiff. As such, it asserts, they were admissible to rebut the decedent's claim that appellant was liable for her injuries. Although appellee Herlihy did not raise an objection to the admission of the interrogatory answer, PEPCO did. It did so on the basis of the Dead Man's Statute. The court adopted its reasoning and excluded the answer. In so doing, we conclude the court erred.

There is little dispute that the answers to the interrogatories, and, in particular, the answer to No. 4, constituted an admission of a party plaintiff.[5] *See Aetna Casualty & Surety Company v. Kuhl,* 296 Md. 446, 455, 463 A.2d 822 (1983); McLain, *Maryland Practice, Maryland Evidence,* § 801(4).1 (1987). For such an admission to be admissible, it must be shown that "(1) the statement was made, adopted, or authorized by a party or that party's agent, predecessor in interest, or coconspirator; (2) the statement is offered in evidence against that party by an opposing party, and (3) as with all evidence, the statement must be relevant to the material fact." McLain, § 801(4).1, p. 304. Such evidence is admissible as substantive evidence. *Castiglione v. Johns Hopkins Hospital,* 69 Md.App. 325, 336, 517 A.2d 786 (1986).

---

4.  (d) *Use.*—Answers to interrogatories may be used at the trial or a hearing to the extent permitted by the rules of evidence.

5.  PEPCO does not dispute this fact; instead, it argues that the prejudicial effect, on it, of admitting the answers is so great and the probative value so slight that the court was justified in refusing their admission. PEPCO reasons that admissions of a party are admissible only as against the admitting party; they may not be admitted against a co-defendant as an admission by that co-defendant. *See Aetna Casualty & Surety Company v. Kuhl,* 296 Md. 446, 455, 463 A.2d 822 (1983).

■ The interrogatory answers meet these criteria; because the decedent admitted tripping over a grate, rather than in a hole in the sidewalk, they were relevant to rebut the allegations in the amended complaint. Furthermore, they were sought to be admitted, not by appellee Herlihy, but rather by appellant, an opposing party.

The critical issue to be resolved on this appeal is the applicability of the Dead Man's Statute to the admissibility of the decedent's answers to interrogatories. The Dead Man's Statute is codified in Maryland Courts & Jud. Proc. Code Ann. § 9–116:

> A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee as such, in which a judgment or decree may be rendered for or against them, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead, unless called to testify by the opposite party, or unless the testimony of the dead or incompetent person has been given already in evidence in the same proceeding concerning the same transaction or statement.

By its express terms, the statute applies only to proceedings "by or against" a personal representative and only to testimony by a party to such proceedings concerning any transaction with, or statement made by, the decedent. *See Guernsey v. Loyola Federal Savings & Loan Association*, 226 Md. 77, 80, 172 A.2d 506 (1961); *Reddy v. Mody*, 39 Md.App. 675, 679, 388 A.2d 555 *cert. denied*, 283 Md. 736 (1978); *Wilt v. Wilt*, 242 Md. 129, 134, 218 A.2d 180 (1966); *Snyder v. Crabbs*, 263 Md. 28, 30, 282 A.2d 6 (1971).

Consistent with its purpose—"to prevent the surviving party from having the benefit of his own testimony where, by reason of the death of his adversary, his representative is deprived of the decedent's version of the transaction or statement", *Ortel v. Gettig*, 207 Md. 594, 116 A.2d 145, *Reddy*, 39 Md.App. at 681, 388 A.2d 555—Maryland courts have strictly construed the statute, *Stacy v. Burke*, 259 Md.

390, 404, 269 A.2d 837 (1970), *Guernsey,* 226 Md. at 80, 172 A.2d 506; *Shaneybrook v. Blizzard,* 209 Md. 304, 309, 121 A.2d 218 (1956), so as to render admissible, "as much testimony as possible ... while preventing self-interested perjury." *Reddy,* 39 Md.App. at 679, 388 A.2d 555. Thus, we have pointed out that:

> The testimony meant to be excluded by the Statute is only testimony of a party to a cause which would tend to increase or diminish the estate of the decedent by establishing or defeating a cause of action by or against the estate.

*Id.*

The instant action was initiated by the decedent. Her personal representative was substituted for her when she died prior to trial. Before she died, however, the decedent had responded to interrogatories propounded to her by appellant. It is her statement as to how the accident occurred, gleaned from these answers, which forms the basis for the issue before the court. Thus, we are faced with two issues: (1) whether the Dead Man's Statute applies in a case where the action was initiated by the decedent but, death having intervened before trial, prosecuted by her personal representative; and (2) if so, whether the Dead Man's Statute applies to party admissions contained in answers to interrogatories.

We may assume that the statute is of sufficient breadth as to encompass actions in which the personal representative substitutes for a plaintiff or defendant before or during trial, but after the action has been filed, and, thus, that such actions are within the scope of the statute. Nevertheless, we think it patent that the statute does not apply to exclude the admissions of a party made in answers to interrogatories.[6]

---

6. As appellee Herlihy points out in his brief, *Shaneybrook v. Blizzard, supra,* involved a similar factual pattern to that *sub judice.* In that case, however, the Court of Appeals did not find dispositive of the Dead Man's Statute issue the fact that the case had originally been

■ That the subject answers to appellant's interrogatories are statements of the decedent is patent. Furthermore, there is no question but that the decedent made them. Reading such statements into evidence does not contravene the Dead Man's Statute. Since the decedent answered the interrogatories during discovery and, as required, filed those answers with the court, no valid issue as to the equality of the positions of the parties with regard to the transaction or testimony is presented. The Dead Man's Statute does not preclude introduction into evidence of all statements made by a decedent. Its exclusion of only those statements made to a party to the proceedings serves to "put the parties ... upon terms of substantial equality in regard to the opportunity to give testimony." *Reddy,* 39 Md.App. at 683, 388 A.2d 555. (Citation omitted) Where, however, there is no doubt that a statement was made by the decedent and the circumstances of its having been made is known to all parties, there is no basis for concluding that there is a substantial inequality with regard to the opportunity of the parties to give testimony.

The case of *Stacy v. Burke, supra,* is instructive. There, the executor of a decedent's estate brought an action for declaration of a constructive trust on certain property in the possession of the decedent's nephew. The nephew sought to admit into evidence two documents, signed by the decedent, which supported his position that the property was given to him as a gift by the decedent. The trial court declined to admit them because, notwithstanding that there was no dispute concerning either the genuiness of the documents or the decedent's signature, it determined that they were "transactions with a decedent" and, hence, inadmissible pursuant to the Dead Man's Statute. The Court of Appeals reversed, explaining:

---

filed by the decedent. And, to be sure, it logically did not do so. The purpose of the Dead Man's Statute is no different when the potential plaintiff dies prior to initiating suit than it is when suit is initiated by a plaintiff who dies prior to trial. In either case, the need to protect the proceedings against self-interested perjury exists in equal measure.

There is little question that Nephew Erle was a party in an action in which the executor of Uncle Erle was a party and could not testify in regard to the conversations or transactions with Uncle Erle in connection with the gifts to Nephew Erle. The letter of April 5, 1967, and the document of December 6, 1967, would have been admissible against Uncle Erle as admissions against interest if he had been living and had sought to set aside the gifts. The parties in their written Stipulation of Facts, stipulated that the signatures appearing in the letter and the document were "genuine and were written by the said deceased, Erle Edwards Stacy." Thus the papers were, prima facie, valid and effective as admissions against interest. . . .

Nephew Erle by identifying them was not testifying in regard to any transaction had with or statement made by Uncle Erle. . . . Inasmuch as the two papers would have been admissible, prima facie, against the decedent if he had been alive and involved in litigation in which they were relevant, the identification of them by Nephew Erle does not controvert or frustrate the policy of the statute. . . . (Citations omitted)

*Stacy v. Burke,* 259 Md. at 405–06, 269 A.2d 837.

Just as identification of documents by a party is not tantamount to testifying to a transaction with or a statement by the decedent, neither is reading an answer to an interrogatory, *albeit* one propounded by the party reading it, tantamount to testifying to a transaction with or a statement by a decedent. Indeed, as in *Stacy,* the answers are admissions against interest insofar as the decedent's amended complaint is concerned. The answers, therefore, are as valid and effective admissions against interest in this case as were the documents in *Stacy.* It follows that the trial court erred in excluding the evidence.

We need not address the alternative grounds raised by appellant—the applicability of the waiver rule enunciated in *Clark v. Strasburg,* 79 Md.App. 406, 412, 556 A.2d 1167, (1989), *rev'd on other grounds, Strasburg v. Clark,* 319

Md. 583, 573 A.2d 1339 (1990). Nor need we address the argument that the Dead Man's Statute does not apply in this case because it is a negligence action. *But see Shaney-brook*, 209 Md. at 309, 121 A.2d 218.

■ Both appellees maintain that, notwithstanding the inapplicability of the Dead Man's Statute to the interrogatory answers, the exclusion of those answers was nevertheless harmless. According to Herlihy, this is so because, and the evidence demonstrated that, appellant is responsible for maintaining the entire sidewalk. Thus, he speculates:

> In finding the County liable to the Plaintiff, the jury necessarily found that the County knew or should have known of the defective condition of the sidewalk and that it had sufficient time to correct the dangerous condition. Based on the evidence in the case, it is likely that the jury found the County liable because the plaintiff tripped when the heel of her shoe went into a hole into the sidewalk located two feet away from the PEPCO grate. The undisputed testimony of Mr. Ortman, the only eyewitness to the accident, was that he *saw* when "the heel [of her shoe] went into the hole and down she went."

Moreover, Herlihy reminds us, the jury was properly instructed that, when it knows or should have known of their existence, the County is responsible for third party caused unsafe conditions in the public walkways and appellant did not object to that instruction. He goes on to maintain that "[s]ince the jury actually found that the County knew or should have known about a hole in the sidewalk a scant two feet away from the grate, it undoubtedly would also have found that the County knew about any alleged defects in the grate."

As indicated, the answers to interrogatories were those of the decedent. As such, they were admissible against Herlihy, who stood in the decedent's shoes. They were not admissible against PEPCO.

PEPCO, however, takes the position that the probative value of the decedent's admission was so outweighed by its

prejudicial effect on PEPCO that the trial court properly excluded them. Critical to PEPCO's position is the fact that admissions of a party are admissible only against that party and not against another party, *See Aetna Casualty Surety Company v. Kuhl,* 296 Md. at 455, 463 A.2d 822; McLain, *Evidence* § 105.1 (1987), a point that Herlihy concedes. Specifically, it maintains that the probative value of the admissions in furthering appellant's case against Herlihy is tenuous and that, rather than contradicting Herlihy's contentions concerning the occurrence of decedent's injuries, they actually supported them. On the other hand, it asserts that the prejudicial effect of those admissions on PEPCO is so great as to have made it very difficult for the jury to refrain from using the statements against PEPCO.

We hold that the error was harmful, but only as it relates to appellee Herlihy. To demonstrate that this is so, it is only necessary to review the evidence that the jury had before it. In opening statement, counsel for PEPCO acknowledged that it was responsible for the grate and that it replaced the grate and the area around the grate following the decedent's fall. This was confirmed by both appellant's and PEPCO's answers to interrogatories. In addition, testimony was presented by a Mr. Ortman that the decedent fell when her "high heels got into the hole which was in the sidewalk adjacent to some grates." In fact, Ortman testified that the hole into which the decedent stepped was "some two feet or more from the grate". In contrast to this information, which was before the jury, the decedent's answers to interrogatories indicated that she "tripped over an improperly secured grating on the sidewalk in front of the PEPCO office...." Had the jury been provided with that admission, it would have been faced with the need to decide whether the decedent was injured in the manner described by Ortman or in the manner described by herself. Had it concluded that the latter was the case, it could have determined that appellant was not responsible for the injury. Of course the opposite result would have been obtained

had it concluded otherwise. In any event, not providing the jury with that information was prejudicial to appellant.

PEPCO, of course, is correct, the admission being admissible only against Herlihy PEPCO would have been entitled to an instruction limiting its effect. And, since we presume jurors follow instructions given by the trial court, we may not speculate that the jury would have reached a verdict, on the basis of that information, finding liability on the part of PEPCO. Accordingly, the jury's verdict as to PEPCO need not be disturbed, Herlihy not having taken an appeal.

JUDGMENT IN FAVOR OF APPELLEE HERLIHY REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; JUDGMENT IN FAVOR OF APPELLEE PEPCO FOR COSTS AFFIRMED.

COSTS TO BE PAID BY APPELLEE HERLIHY.

BISHOP, Judge, dissenting.

I agree with the majority that the Dead Man's Statute is not a bar to the introduction of the decedent's answers to interrogatories as they relate to Montgomery County; however, I respectfully dissent from the majority's disposition that, on remand, the case should be tried against Montgomery County, only.

The reasoning of the majority on this issue is, at best, shallow:

> PEPCO, of course, is correct, the admission being admissible only against Herlihy, PEPCO would have been entitled to an instruction limiting its effect. And, since we presume jurors follow instructions given by the trial court, we may not speculate that the jury would have reached a verdict, on the basis of that information, finding liability on the part of PEPCO. Accordingly, the jury's verdict as to PEPCO need not be disturbed, Herlihy not having taken an appeal.

I would remand for a trial against both parties and not speculate that the exact evidence would be submitted to a

jury who would be clone of the jury who first tried this case.

The substantial injustice that would result from a defendant's verdict in the new trial against Montgomery County, leaving decedent's estate without recovery, would far outweigh any unfairness in requiring PEPCO to relitigate the issue of its culpability.

In the first trial the jury found that PEPCO was not liable. The jury did not have the benefit of considering the decedent's answers to interrogatories as admissions which tend to exculpate Montgomery County. What it did have was the choice of two possible tort-feasors. Had it been apprised of the fact that the admissions tended to relieve appellant of liability, the jury may have reviewed the facts in light of the answers and reexamined its conclusions about PEPCO.

I cannot speculate that there will be no new evidence produced in the new trial against PEPCO which may establish its liability. I cannot disregard the possibility that a jury, faced with the possibility of denying decedent's estate recovery altogether, might strike a compromise or reassess its position with regard to the liability of appellee PEPCO to appellee.

There is no rule or authority cited by the majority that requires that the new trial must be only against Montgomery County. To do substantial justice requires that the new trial be truly a *new* trial against both defendants.